# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-3651

———————

United States of America,

        Appellee,

v.

Bernie Lazar Hoffman, also known
as Tony Alamo,

        Appellant.

        \*
        \*
        \*
        \*   United States District
        \*   Court for the Western
        \*   District of Arkansas.
        \*
        \*
        \*
        \*

———————

Submitted: September 21, 2010
Filed: December 2, 2010

———————

Before BYE, BEAM, and SMITH, Circuit Judges.

———————

BEAM, Circuit Judge.

A jury found Bernie Lazar Hoffman, a/k/a Tony Alamo, guilty of ten counts of transporting five minor females across state lines for the purpose of engaging in illegal sexual activity in violation of the Mann Act, 18 U.S.C. §§ 2 and 2423. The district court[1] sentenced Hoffman to consecutive terms of imprisonment on all counts, for a total term of life imprisonment. Because there was sufficient evidence to support the verdict on each of the ten counts and the district court appropriately sentenced

———————

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

Hoffman under the United States Sentencing Guidelines (U.S.S.G. or Guidelines) and the Constitution, we affirm.

## I.    BACKGROUND

The government charged Hoffman with ten counts of violating the Mann Act for transporting minor females in interstate commerce with the intent to engage in criminal sexual activity. These charges followed an investigation conducted by the Federal Bureau of Investigation (FBI) into Hoffman's travel with certain young children between 1994 and 2005. The trial evidence in this case is voluminous and includes testimony from many people, including each of the five girls that Hoffman made his "wife," some even at the tender age of eight. We are not going to document the specific nefarious activities that occurred between these individuals and Hoffman. For purposes of the federal charges in play, it suffices that these girls testified that Hoffman engaged in illegal sexual contact with each of them either during or shortly following interstate travel and that, regardless of whether Hoffman actually traveled with them, all their travel was taken under the direction of and under the control of Hoffman. In the instances where Hoffman did not travel with the girls, the testimony revealed that Hoffman, alone, determined the length of the trip and directed the girls when to return to Arkansas, where he engaged in sexual intercourse with each girl shortly upon her return.

At sentencing, the district court accurately conveyed that the imposed sentence was based upon an application of the Guidelines, which the court appropriately applied in an advisory fashion; information from the Presentence Report; trial testimony; arguments and objections by both sides. Further, the imposed sentence followed the submission of evidence in the form of testimony and letters at the sentencing hearing itself. The court sentenced Hoffman to life imprisonment. At one point during its colloquy, the district court stated:

[h]opefully, this sentence, life imprisonment, will uphold the law and respect for the law and send a message to others that violation of children, young girls like these victims, shall not be and will not be tolerated in the courts around this United States of America. Mr. Alamo, one day you will face a higher and greater judge than me. May he have mercy on your soul.

Hoffman appeals, claiming that the evidence presented does not support the jury's verdict and that the imposed sentence was tainted by the district court's personal sense of religion.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

This court reviews the sufficiency of the evidence presented at trial de novo, viewing the evidence in the light most favorable to the jury's verdict and drawing all reasonable inferences in the government's favor. United States v. Coleman, 584 F.3d 1121, 1125 (8th Cir. 2009), cert. denied, 130 S. Ct. 1752 (2010). We find that sufficient evidence exists to support Hoffman's conviction.

[I]f after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The standard for determining the sufficiency of the evidence is strict, and a guilty verdict should not be lightly overturned. We view the evidence in a light most favorable to the verdict, giving the verdict the benefit of all reasonable inferences, and [we] will reverse only if the jury must have had a reasonable doubt concerning one of the essential elements of the crime.

United States v. Dugan, 238 F.3d 1041, 1043 (8th Cir. 2001) (second and third alterations in original) (internal quotations omitted).

The statutory antecedents of the current Mann Act were enacted to outlaw the use of interstate commerce as a calculated means for effectuating sexual immorality, and date back to the early part of the twentieth century.  Mortensen v. United States, 322 U.S. 369, 375 (1944), United States v. Vang, 128 F.3d 1065, 1069 (7th Cir. 1997).  Under its current version, § 2423(a) states:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense,[2] shall be fined under this title and imprisoned not less than 10 years or for life.

In the instant case, viewing the evidence in the light most favorable to the verdict, Hoffman's intention that these girls engage in illegal sexual conduct was a dominant motive of their interstate travel.  Even in the instances when Hoffman did not travel with the girls, the evidence supports the conclusion that he directed their return to Arkansas so that he could resume his sexual activity with them.  This is not a case, warned of by the Court in Mortensen so many years ago, and hypothesized about by Hoffman, of an immoral person merely traveling from place to place indulging in illegal or immoral acts incidentally.  Mortensen, 322 U.S. at 376.  The evidence here clearly demonstrated that in each instance Hoffman directed the travel and transport of these girls across state lines for the purpose of engaging in proscribed sexual acts, thus supporting the jury's conviction on each and every charge.

In United States v. Broxmeyer, 616 F.3d 120 (2d Cir. 2010), a case relied upon by Hoffman at oral argument to bolster his argument that sex was merely incidental to these trips, the court reversed a § 2423(a) conviction because the *mens rea* of intent

---

[2]According to the government, Hoffman could have been charged with violating various Arkansas criminal statutes.

did not coincide with the *actus reus* of crossing state lines. 616 F.3d at 129. There, a hockey coach entered into a sexual relationship with a fifteen-year-old player. Relevant to the § 2423(a) violation, the coach drove the girl from New York to her home in Pennsylvania one Sunday following practice and had sex with her before leaving New York. On those facts, the *actus reus* and *mens rea* did not coincide. Id. at 127-30. Unlike Broxmeyer, however, the evidence in the instant case supports the jury's conclusion that at all times Hoffman's intent in transporting these girls across state lines was for the purpose of engaging in illegal sexual activity.

As to Hoffman's intent, we have held that "[t]he illicit behavior must be one of the purposes motivating . . . the interstate transportation [of the minor], but need not be the dominant purpose." United States v. Cole, 262 F.3d 704, 709 (8th Cir. 2001) (internal quotation omitted). The sexual activity just may not be merely incidental to the trip. Id. Indeed, the jury instructions, which Hoffman does not challenge on appeal, accurately reflect the required determination. In particular, jury instruction 12 stated:

> It is not necessary for the government to prove that illicit sexual activity was the only, or sole, purpose for transporting the minor across state lines. However, the government must prove that sexual activity with the minor, which is prohibited by law, was a dominant motive of the travel. In determining whether the government has met its burden, you should keep in mind that a person may have several different motives or reasons for doing a particular act such as traveling and all such reasons may, in varying degrees, prompt the act.

It is the purpose for the transportation of the *minor* that is our focus under the Mann Act, not per se a defendant's reasons for travel generally. That a defendant facing charges under § 2423(a) need not have even traveled at all further supports this fact. In his brief, Hoffman views the standard through a different lens and argues, erroneously, that it requires proof that the illegal conduct was a "dominant purpose"

of the trip, generally. He claims, that at best, sex was merely incidental to each of the out-of-state trips, and not a dominant purpose of the trip. Our focus, however, is on Hoffman's intent in having these girls transported across state lines.

Hoffman concedes that the proof is "admittedly stronger" as to certain of the ten convictions under the Mann Act in this case. But, Hoffman argues that there is no basis for a Mann Act conviction for others of these girls based upon the evidence presented. There were trips, he claims, where the record is "singularly devoid" of evidence of sex in relation to the trip at *all*, and all that the government proved was that Hoffman was having sex during that time period with that minor and that she took a trip. Additionally, despite Hoffman's arguments that the girls' return travel to Arkansas does not support Mann Act violations in this case, the return journey *can* be considered apart from its integral relation with the round trip as a whole, in the determination whether a violation of the Act has occurred.[3] Mortensen, 322 U.S. at 375. Indeed, we have held that the "illicit intent must [be] formed only before the conclusion of the interstate state [sic] journey." Cole, 262 F.3d at 708 (second alteration in original) (internal quotation omitted).

As one example of the failure of proof, Hoffman highlights the testimony of Jane Doe #3. Her testimony revealed that she became Hoffman's wife at the age of fourteen. Before Hoffman would consummate the marriage, however, he directed the girl to travel to Oklahoma so that she could placate her father, who had misgivings about her residing with Hoffman and had threatened to contact the FBI. Hoffman told Jane Doe #3 that he did not want to have sexual intercourse with her before the trip for fear that while in Oklahoma, someone might take her to a doctor and discover she was no longer a virgin. Jane Doe #3 was in Oklahoma until Hoffman directed that she return. Hoffman engaged in sexual intercourse with this girl the day she returned to

_____

[3]In this regard, we duly note the government's objections to the notations written by hand on the corrected page 7 of Appellant's Brief that was filed with the court on September 22, 2010.

Arkansas. Hoffman claims the evidence is sketchy, at best, regarding the Mann Act violation on these facts, especially since Jane Doe #3 traveled to be with her family and Hoffman did not accompany her. Yet, viewing the evidence in the light most favorable to the verdict, the evidence wholly belies this assertion and supports the conviction because Hoffman transported Jane Doe #3 from Oklahoma to Arkansas so that he could have sex with her.

In this case, the evidence amply supports the jury's determination that Hoffman intended to have sex with these girls and that he transported them across state lines for that purpose. In fact, the inference easily gleaned from the evidence is that there was no other purpose for the girls to be on the trip at all *except* to service Hoffman. It is disingenuous to suggest that Hoffman's intentions for these minor girls' transportation across state lines was for any purpose *other* than their sexual exploitation. He orchestrated and controlled their travel through interstate commerce so that they would be available to him to engage in illegal sexual relations.

Viewing the evidence in the light most favorable to the government, the jury's verdict that Hoffman knowingly transported these minors in interstate commerce with the intent to engage in sexual activity prohibited by law was reasonable. We therefore affirm the verdict.

### B.    Sentencing

Hoffman also argues that the district court's statement "Mr. Alamo, one day you will face a higher and greater judge than me. May he have mercy on your soul," demonstrates that the imposed sentence was impermissibly influenced by religious factors, which are irrelevant and should receive no weight. He bolsters this claim by further noting the court's acknowledgment that some of the victims were frightened into believing they risked a loss of their salvation if they didn't surrender, as well as the court's reference to Hoffman's abuse of power as the girls' pastor, a person of trust

and supreme authority in Hoffman's church. Taking these statements together, claims Hoffman, there is no doubt the district court was predisposed to impose a harsh sentence given its own personal sense of religion, thus abusing its discretion under 18 U.S.C. § 3553(a) and violating due process.[4]

We apply a deferential abuse-of-discretion standard in reviewing the imposition of sentences. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009). We "first ensure that the district court committed no significant procedural error," which includes failing to calculate the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. Gall v. United States, 552 U.S. 38, 51 (2007). A district court abuses its discretion when it "(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." Feemster, 572 F.3d at 461 (quotation omitted). In the absence of procedural error below, we consider "'the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" Id. (quoting Gall, 552 U.S. at 51). If the defendant's sentence is within the Guidelines range, this court "may, but [is] not required to, apply a presumption of reasonableness." Id. (quotation omitted).

---

[4]Although it appears that Hoffman equates an abuse of discretion under § 3553(a) with a violation of due process, nowhere does he expand upon this constitutional claim. As we have done in similar past circumstances, we decline to hold–as a matter that would be of first impression–that any procedural error at a criminal defendant's sentencing violates such defendant's due process rights. United States v. Van Nguyen, 602 F.3d 886, 894 n.7 (8th Cir.), cert. denied, Nguyen v. United States, 2010 WL 3184138 (U.S. Oct. 4, 2010) and Nguyen v. United States, 2010 WL 3074284 (U.S. Oct. 4, 2010).

There was no abuse of discretion here. Reviewing the entire sentencing transcript and placing these challenged comments by the district court in context, as we should, the district court based its sentence on its analysis of appropriate factors. The court's acknowledgment that Hoffman used his position of power over these girls in the commission of these crimes was most certainly reasonable, and in fact it is expected this would play a role in the court's analysis at sentencing. Further, the brief comment about a "higher and greater judge," and "[m]ay he have mercy on your soul," may be interpreted to be religious in nature but in no way does it appear to have been an inappropriate driving force or improper consideration during the court's sentencing of Hoffman. Indeed, religion was a pervasive theme underlying the entire trial. It is thus not surprising that religion might have been mentioned at sentencing.

Given the court's sentencing colloquy, the record reflects that the court appropriately based the sentence on the sum of the evidence in light of the advisory sentencing Guidelines and the court's analysis of the § 3553(a) factors. But see United States v. Bakker, 925 F.2d 728, 740-41 (4th Cir. 1991) (questioning, in a pre-Guidelines case, whether a judge's comment starting with "those of us who do have a religion" was proof of an impermissible use of religion in sentencing and reversing for resentencing out of an abundance of caution). Hoffman goes too far in characterizing these comments as proof that the sentencing court's own sense of religious propriety might have clouded its imposition of sentence.

Nothing suggests that the district court's personal view of religion in any way influenced an aspect of Hoffman's sentence. We have no "apprehension" here regarding the basis for the court's imposed sentence. Id. at 741. Accordingly, giving deference to the district court, we find no abuse of discretion.

## III. CONCLUSION

For the reasons stated herein, we affirm.

_____